IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMCO INSURANCE COMPANY, | : | |
| | : | Case No. C2-06-472 |
| Plaintiff, | : | |
| | : | Judge Frost |
| v. | : | |
| | : | Magistrate Judge King |
| LAUREN-SPENCER, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANTS LAUREN-SPENCER, INC., SHIRLEY LEE, BOWEN LEE, AND POPPHIE LEE**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, and in accordance with this Court's Preliminary Pretrial Order dated November 20, 2006, Defendants Lauren-Spencer, Inc., Shirley Lee, Bowen Lee, and Popphie Lee (collectively, the "Lauren-Spencer Defendants") hereby move for partial summary judgment on the principal defense asserted by Plaintiff AMCO Insurance Company ("AMCO"). Because insurance coverage for the copyright infringement claims asserted against the Lauren-Spencer Defendants in the lawsuit commenced by George Harris (the "Harris lawsuit") is not barred by Exclusion (i) in the AMCO insurance policy, partial summary judgment should be entered in favor of the Lauren-Spencer Defendants. This motion is supported by the accompanying Memorandum in Support and the Joint Submission of Undisputed Facts filed with this Court on February 1, 2007 (Doc. # 19).

Respectfully submitted,

s/William J.Pohlman
William J. Pohlman (0040912)
Kathreen Nuber McGinnis (0078041)
VORYS SATER SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Telephone:   (614) 464-8349
Facsimile:    (614) 719-4908
wjpohlman@vssp.com

*Attorneys for Defendants Lauren-Spencer, Inc., Shirley Lee, Bowen Lee, and Popphie Lee*

2

**MEMORANDUM IN SUPPORT**

**I.    PRELIMINARY STATEMENT**

In this insurance coverage action, AMCO seeks a declaration that it is not required to provide coverage to the Lauren-Spencer Defendants for the copyright infringement claims asserted in the Harris lawsuit. In contending that there is no coverage for the Harris claims, AMCO focuses on Exclusion (i) of the Policy, which excludes coverage for "Infringement Of Copyright, Patent, Trademark or Trade Secret." However, this exclusion contains an exception, which reinstates coverage for "infringement, in [the insured's] 'advertisement,' of copyright, trade dress or slogan."

As set forth more fully below, the undisputed facts establish that any infringement of Harris' copyright interests occurred in Lauren-Spencer's advertising activities. Thus, Exclusion (i) does not operate to bar coverage for the copyright infringement claims asserted in the Harris lawsuit against the Lauren-Spencer Defendants. Accordingly, the Lauren-Spencer Defendants are entitled to partial summary judgment in their favor with respect to the non-applicability of AMCO's principal coverage defense.

**II.    STATEMENT OF UNDISPUTED FACTS**

**A.    The Lauren-Spencer Defendants**

Lauren-Spencer, Inc. ("Lauren-Spencer") is an Ohio corporation with its principal place of business in Powell, Ohio. See Joint Submission of Undisputed Facts, ¶ 3 ("Facts at ¶___"). Defendants Shirley Lee, Bowen Lee, and Popphie Lee have been employed by Lauren-Spencer since at least 2002. Id. at ¶¶ 4, 5, 6.

Lauren-Spencer is engaged in the retail sale of costume jewelry. Id. at ¶ 7. Lauren-Spencer does not manufacture any jewelry; instead, Lauren-Spencer purchases costume jewelry

from manufacturers in Asia, imports the goods to the United States, and sells the jewelry to retail customers.  Id.

At all times pertinent to this litigation, Lauren-Spencer neither owned nor operated a retail store.  Id. at ¶ 8.  Instead, Lauren-Spencer sold goods in three ways: (1) attendance at trade shows, (2) telephone orders, and (3) an Internet website.  Id.  Lauren-Spencer also sold some costume jewelry directly from its home office in Powell, Ohio.  Id.

### B.     The Harris Lawsuit

On or about September 14, 2004, George Harris commenced a lawsuit against the Lauren-Spencer Defendants in the United States District Court for the Southern District of Ohio, Eastern Division, Case No. 2:04-cv-00884 (Watson, J.).  Facts at ¶ 10 & Ex. B.  In his Complaint, Harris asserts that he holds a copyright interest in various ornamental jewelry designs, including dog breed jewelry.  Facts at ¶ 11; Ex. B. at ¶ 12.[1]  Harris further contends that the Lauren-Spencer Defendants "infringed said copyrights by marketing, advertising, and placing upon the market various molded and cast ornamental pieces which were, upon information and belief, copied directly from Plaintiff's copyrighted Works."  Facts at ¶ 12; Ex. B at ¶ 30.[2]

It is undisputed that Lauren-Spencer sold the dog breed jewelry, which allegedly infringed on Harris' copyright interests, between February 2004 and October 5, 2004.  Facts at ¶ 13.  During that time period, Lauren-Spencer promoted the sale of the disputed dog breed jewelry in three ways.  At trade shows, Lauren-Spencer mounted the jewelry on display boards to allow for inspection by potential customers.  Id. at ¶ 14 & Ex. C.  In addition, Lauren-Spencer distributed brochures that depicted the dog breed jewelry and offered the jewelry for sale.  Id. at

---

[1]    In the underlying Harris lawsuit, the Lauren-Spencer Defendants dispute the validity of Harris' purported copyright interests.

[2]    In the Harris lawsuit, the Lauren-Spencer Defendants also contest the validity of Harris' claims of infringement.

2

¶¶ 15-16; Exs. D & E. Finally, Lauren-Spencer operated an Internet website that contained pages depicting the dog breed jewelry (digitally photographed). Id. at ¶ 17 & Ex. F. The Lauren-Spencer website also included pricing information and a "shopping cart" page, through which customers could purchase the dog breed jewelry. Id.

The parties in the Harris lawsuit have filed various dispositive motions, which are fully briefed and ripe for decision.[3]

### C. The AMCO Insurance Policy

Well before the Harris lawsuit was filed, Lauren-Spencer had purchased an insurance policy from AMCO (#ACP WHDO 7101414105), which provided general liability coverage for Lauren-Spencer and its employees ("the Policy"). Facts at ¶ 9 & Ex. A. The Policy extends coverage to the Lauren-Spencer Defendants for, *inter alia*, "Personal and Advertising Injury Liability." Specifically, Part B of the "Coverage" Section contains the following Insuring Agreement in which AMCO grants coverage for Personal and Advertising Injury liabilities:

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the coverage period.

Ex. A (p. 0013-14). Additionally, AMCO defines "personal and advertising injury" in terms of injuries arising out of various enumerated "offenses." Id. (p. 0023). Of particular applicability

---

[3] For the Court's convenience, a copy of the current docket sheet from the underlying Harris lawsuit is attached hereto as Exhibit 1.

3

to this case is the last listed offense: "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Id. (p. 0023; ¶ 14(g)).[4] Under the general insuring agreement, therefore, AMCO promises to cover a third party's injuries that are caused by copyright infringement in the insured's advertisements.

After granting coverage for Personal and Advertising Injury Liability in the Coverage section of the Policy and then defining advertising injury to include the specific offense of copyright infringement, AMCO then seemingly reverses course. In the section of the Policy specifying various exclusions, AMCO includes a provision entitled "Infringement Of Copyright, Patent, Trademark or Trade Secret." Id. (p. 0014; ¶ 2(i)). This provision, Exclusion (i), purports to exclude coverage for "'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights." Id. Although patent, trademark, and trade secret infringement are not among the specifically enumerated offenses, cf. Ex. A (p. 0023), copyright, trade dress, and slogan are identified as such. Id. Read literally, therefore, Exclusion (i) seemingly eviscerates the coverage for advertising injury arising out of copyright infringement that was expressly granted in the Coverage section of the Policy.

Perhaps to clarify this seeming incongruity, AMCO added an exception to Exclusion (i). More particularly, Exclusion (i) "does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan." Ex. A (p. 0014) (emphasis added). Thus, the exception to

---

[4] The Policy defines "Advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Ex. A (p. 0021; ¶ V.1). For purposes of this definition, the Policy further provides as follows:

   a. Notices that are published include material placed on the Internet or on other similar electronic means of communication; and
   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

Id. Thus, the Policy expressly provides that Internet communications and websites can constitute covered advertisements.

4

Exclusion (i) restores coverage for copyright infringement in an insured's advertisements, *i.e.*, public notices intended to attract customers for the insured's goods and products.

      **D.**      <u>**This Insurance Coverage Action**</u>

In October 2004, the Lauren-Spencer Defendants tendered the <u>Harris</u> lawsuit to AMCO. Facts at ¶ 18 & Ex. G. In a November 12, 2004 letter, AMCO agreed to provide the Lauren-Spencer Defendants with a defense in the <u>Harris</u> lawsuit. <u>Id.</u> at ¶ 19 & Ex. H. By letter dated November 23, 2004, AMCO reiterated its commitment to provide the Lauren-Spencer Defendants with a defense, but indicated that it was "investigating this matter and defending under a reservation of rights." <u>Id.</u> at ¶ 20 & Ex. I. Then, more than 18 months later, AMCO instituted this insurance coverage action against its insureds.

In the Complaint, AMCO seeks a declaration from this Court that "[t]he Policy issued by AMCO to Lauren-Spencer, Inc. does not provide coverage for any of the claims asserted by George Harris against the Lauren-Spencer Defendants" and that AMCO is not legally obligated to defend or indemnify the Lauren-Spencer Defendants in connection with the <u>Harris</u> lawsuit. <u>See</u> Complaint, prayer ¶¶ 1-5. As principal support for this position, AMCO asserts that Exclusion (i) operates to bar coverage for the copyright infringement claims asserted against the Lauren-Spencer Defendants in the <u>Harris</u> lawsuit. Complaint, ¶¶ 39, 46.

At the preliminary pretrial conference, the parties agreed to file cross-motions for partial summary judgment on the threshold issue of whether Exclusion (i) operates to bar coverage for the <u>Harris</u> claims. <u>See</u> <u>generally</u> Preliminary Pretrial Order (Doc. # 14). For the reasons set forth below, Exclusion (i) does <u>not</u> bar coverage for Harris' copyright infringement claims against the Lauren-Spencer Defendants (assuming, for purposes of this motion only, that those claims have any merit whatsoever).

**III.   ARGUMENT**

   **A.   Ohio's Applicable Interpretive Principles**[5]

Two main interpretive principles bear on this Court's task of applying the language of Exclusion (i) to the undisputed facts.  First, it is "a central cannon of insurance contract construction" that "'language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.'" Hutchinson v. J.C.Penney Cas. Ins. Co., 17 Ohio St. 3d 195, 197 (1985), citing Buckeye Union Ins. Co. v. Price, 39 Ohio St. 2d 95 (1974).  To prevail on coverage, therefore, an insured need only establish that its interpretation of the contract is reasonable.  On the other hand, in order to defeat coverage, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." Andersen v. Highland House Co., 93 Ohio St. 3d 547, 549 (2001) (emphasis added) (citations omitted).

Second, it is hornbook Ohio law that exclusions in insurance policies must be narrowly construed in favor of the insured.  Simply stated, "the insurer, being the one who selects the language, must be specific in its use, and an exclusion from liability must be clear and exact in order to be given effect." American Financial Corp. v. Fireman's Fund Ins. Co., 15 Ohio St. 2d 171, 174 (1968); see also Watkins v. Brown, 97 Ohio App. 3d 160, 164 (1994) ("Because it is the insurance carrier that typically drafts the policy, where policy language is ambiguous, that language is to be construed in the way that is most favorable to the insured. . . .  This general

---

[5]   Because Lauren-Spencer is an Ohio corporation with its principal place of business in Ohio, the Policy was purchased in Ohio, and the insured risk is located in Ohio, it is indisputable that Ohio is the state with the "most significant relationship to the transaction and the parties." See Ohayon v. Safeco Ins. Co., 91 Ohio St. 3d 474, 477 (2001) (adopting Restatement (Second) Conflict of Laws §188).  Indeed, AMCO acknowledged that reality when it included a section in the Policy entitled "Ohio Changes." See Facts at Ex. A (p. 0037-38).  Accordingly, Ohio law governs the interpretation of the Policy.

6

principle applies with even greater force to language that purports to limit or qualify coverage."). In fact, a presumption arises that an exclusion only applies to that which is explicitly excluded. See Moorman v. Prudential Ins. Co., 4 Ohio St. 3d 20, 22 (1983) ("Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.").

When these two interpretative principles are applied jointly, the following maxim applies: "If an exclusionary clause will reasonably admit of an interpretation that would preserve coverage for the insured, then as a matter of law, a court is bound to adopt the construction that favors coverage." Watkins, 97 Ohio App. 3d at 164. As explained below, Exclusion (i) can, at a minimum, reasonably be interpreted in a manner that preserves coverage for the Lauren-Spencer Defendants. As a result, the Lauren-Spencer Defendants are entitled to partial summary judgment on the non-applicability of Exclusion (i).

### B. AMCO's Flawed Application of Exclusion (i) to the Undisputed Facts

AMCO's position in this matter appears to be that the Lauren-Spencer Defendants, in their advertisements, did not infringe Harris' copyrights. See, e.g., Complaint, ¶ 45 ("None of the Lauren-Spencer Defendants broadcasted or published any 'notice' that infringed on Harris' copyright, trade dress, or slogan."). According to AMCO, the placement of photographs of allegedly infringing dog breed jewelry "on the Lauren-Spencer website and in the Lauren-Spencer brochure" does not constitute "[copyright] infringement in advertising." Complaint, ¶ 46 (emphasis added). Although AMCO does not explain what else may be required, it contends that "only plac[ing] photographs" on the website and in the brochure is insufficient. Id. AMCO's position is bereft of any factual or legal support.

7

First, the nature of Lauren-Spencer's business illustrates the fallacy in AMCO's position. Lauren-Spencer does not manufacture any jewelry. Facts at ¶ 7. Thus, the Lauren-Spencer Defendants could not have infringed Harris' purported copyright interest through the manufacture of the dog breed jewelry at issue. Indeed, the only way in which the Lauren-Spencer Defendants could have infringed Harris' purported copyright interest in the dog breed jewelry is through their marketing and promotional activities. Not surprisingly, therefore, Harris contends that Lauren-Spencer's activities in "marketing, advertising, and placing upon the market" the dog breed jewelry infringed upon his alleged copyright interest. Facts at ¶ 12; Ex. A, ¶ 30.

Second, the Lauren-Spencer Defendants' marketing and promotion of the dog breed jewelry clearly constituted "advertis[ing]" within the meaning of the Policy. The display boards, the brochures, and the website were all directed to the general public for purposes of attracting customers for Lauren-Spencer's jewelry. The display boards, upon which the dog breed jewelry in which Harris claims a copyright interest were mounted, were used at trade shows to elicit sales. Facts at ¶ 14 & Ex. C. The brochures, which included photographs of the dog breed jewelry, were distributed to the public for the purpose of eliciting telephone and Internet orders. Id. at ¶¶ 8, 15, 16 & Exs. D, E. Finally, the Internet website, which at the time included pages with digital photographs of the dog breed jewelry, was another vehicle through which Lauren-Spencer solicited sales. Id. at ¶ 17 & Ex. F. Indeed, the Policy expressly recognizes that electronic means of communication, including websites, which are intended to attract customers, are covered "advertising." Ex. A (p. 0021).

The decision in Westfield Cos. v. O.K.L. Can Line, 155 Ohio App. 3d 747 (Ohio Ct. App. 2003), is also instructive. In O.K.L., the court considered whether claims of trade dress

8

infringement were covered under policy language nearly identical to the AMCO Policy provisions. There, the claimant did not use the words "advertisement" or "advertising" in its complaint; instead, the claimant alleged that the insured "sold and marketed" the infringing product. In finding that the policy requirement of a "'notice' intended to attract customers" had been satisfied, the court focused upon the insured's promotional activities:

> To support our conclusion that [the claimant] was alleging an advertising injury, we note that [the insured] attached to its summary-judgment motion printed web pages from [the insured's] web site depicting for sale the allegedly infringing product. The web pages were dated May 2000. **A web page is advertising under any definition.** We are satisfied that the wording of the complaint and the actual existence of a public ad for the product indicated a possibility that [the claimant] was alleging that [the insured] had engaged in "advertisement" as defined in the policy.

Id. at 755 (emphasis added). Contrary to AMCO's suggestion, therefore, the undisputed evidence establishes that the Lauren-Spencer Defendants engaged in advertising activities that allegedly infringed Harris' copyright interests. For this reason, Exclusion (i) has no applicability.

### C. The Causal Connection Between the Lauren-Spencer Defendants' Advertisements and Harris' Claimed Copyright Infringement

When addressing the availability of insurance coverage for advertising injuries, most courts have held that, in order to establish insurance coverage for advertising injury, a sufficient causal connection must exist between the injury to a claimant's intellectual property interests and the insured's advertising activities. For instance, in Bank of the West v. Superior Court, 833 P.2d 545, 559 (Cal. 1992), the California Supreme Court held that, for coverage to exist, there must be a causal connection between the insured's advertising activities and an enumerated advertising injury "offense." Because the underlying claimants were harmed by the bank's lending practices, not its advertising, the bank was not entitled to coverage. See also Westfield

Ins. Co. v. Factfinder Marketing Research, Inc., 168 Ohio App. 3d 391, 403 (Hamilton Cty. 2006) (noting that, for coverage to exist, there must be "a nexus between the advertising activity and the advertising injury"). The exception in AMCO's Exclusion (i) that restores coverage for "infringement, in your advertisement, of copyright, trade dress or slogan" is simply a reiteration of this causal connection requirement.

In this case, "a causal connection" clearly exists between the Lauren-Spencer Defendants' advertisements and the alleged infringement of Harris' copyright interests. For example, in his first cause of action, Harris asserts that "Defendants have infringed said copyrights by **marketing, advertising, and placing on the market** various molded and cast pieces which were . . . Plaintiff's copyrighted Works." Ex. B at ¶ 30 (emphasis added). In the second cause of action, Harris alleges that "Defendants' **advertising, marketing** and sale of the copies . . . constitute . . . infringement and misappropriation." Id. at ¶ 44 (emphasis added). Harris' third cause of action requests, "as a consequence of Defendants' infringement," an accounting of "profits from the **publication**, distribution, sale or other disposal of such infringing material." Id. at ¶ 52 (emphasis added). The fourth cause of action asserts that "Defendants have been **advertising, distributing**, selling and otherwise **marketing** the infringing cast pieces." Id. at ¶ 54 (emphasis added). In the fifth cause of action, Harris contends that the Lauren-Spencer Defendants "fraudulently **advertised** that they were the original authors of said Works." Id. at ¶ 58 (emphasis added). Thus, Harris' claims against the Lauren-Spencer Defendants rely heavily, if not solely, on the proposition that Harris' alleged copyright interests have been infringed by the advertising activities of the Lauren-Spencer Defendants.

The undisputed facts also clearly establish that Lauren-Spencer's advertising activities were causally connected to any infringement of Harris' claimed copyright interests.  The Lauren-Spencer Defendants displayed the jewelry in question on boards at trade shows, thereby broadcasting the goods (in an allegedly infringing manner) to a specific market segment in an effort to attract customers and to notify them that Lauren-Spencer had such jewelry for sale.  Facts at ¶ 14 & Ex. C.  In addition, Lauren-Spencer ordered brochures, which contained photographs of the disputed dog breed jewelry.  Id. at ¶¶ 15, 16 & Exs. D, E.  These brochures were distributed to the general public to notify them of the goods Lauren-Spencer was offering for sale, including the dog breed jewelry, in hopes of encouraging customers to purchase those goods.  Id.  Similarly, Lauren-Spencer posted pictures of the dog breed jewelry on its website pages, so that customers could obtain pricing information and place orders.  Id. at ¶ 17 & Ex. F.  The publishing of the allegedly infringing goods on the Lauren-Spencer website, therefore, was done in an effort to notify consumers of the existence of the dog breed jewelry and to attract customers to buy such jewelry.  Id.

There is no question that, if Harris' copyright interests were infringed, the infringement occurred in the course of the Lauren-Spencer Defendants' advertising activities -- activities that fall squarely within AMCO's definition of "advertising," within AMCO's grant of coverage for "Personal and Advertising Injury Liability," and beyond the reach of Exclusion (i).

## IV.     CONCLUSION

For the reasons set forth herein, there is no genuine issue of material fact with respect to the principal coverage defense advanced by AMCO. Quite simply, Harris' claims of copyright infringement are directly related to Lauren-Spencer's advertising activities. Because there is a clear causal connection between the Lauren-Spencer Defendants' advertising activities and the copyright infringement alleged by Harris, Exclusion (i) cannot be read to bar coverage. Accordingly, the Lauren-Spencer Defendants are entitled to partial summary judgment with respect to the non-applicability of Exclusion (i).

Respectfully submitted,

s/William J. Pohlman
William J. Pohlman (0040912)
Kathreen Nuber McGinnis (0078041)
VORYS SATER SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Telephone:     (614) 464-8349
Facsimile:     (614) 719-4908
wjpohlman@vssp.com

*Attorneys for Defendants Lauren-Spencer, Inc., Shirley Lee, Bowen Lee, and Popphie Lee*

**CERTIFICATE OF SERVICE**

     I hereby certify that on February 28, 2007, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to the following counsel of record in this matter:

> Amy S. Thomas
> Reminger & Reminger Co., LPA
> Capitol Square Office Building
> 65 E. State Street, 4th Floor
> Columbus, OH  43215-5657
>
> *Attorneys for Plaintiff AMCO*
>
> William M. Mattes
> Dinsmore & Shohl
> 175 S. Third Street
> Suite 1000
> Columbus, OH  43215-5134
>
> *Attorneys for Defendant George Harris*

                                           s/William J. Pohlman
                                           William J. Pohlman (0040912)