# IN THE UNITED STATE DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY : | |
| : | |
| Plaintiff : | Case No. C2-06-472 |
| : | |
| v. : | Judge FROST |
| : | |
| LAUREN SPENCER, INC. et al., : | |
| : | Magistrat Judge KING |
| Defendants : | |

## PLAINTIFF AMCO INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff AMCO Insurance Company hereby moves this Court for an order granting judgment in its favor that declares that AMCO Insurance Company has no duty to defend or indemnify its insureds relative to an underlying lawsuit filed against these insureds. As set forth in the accompanying Memorandum in Support, no genuine issues of material fact exist, and Plaintiff is entitled to judgment as a matter of law.

Respectfully submitted,

**Signature:**

**/s/ Amy S. Thomas**
Amy S. Thomas  (0074380)
**Reminger & Reminger Co., L.P.A.**
65 East State, Street, 4th Floor
Columbus, Ohio  43215
(614) 232-2627 - Direct Dial
(614) 232-2410 - Facsimile
E-mail:  athomas@reminger.com
*Attorney for Plaintiff AMCO Insurance Company*

**MEMORANDUM IN SUPPORT OF PLAINTIFF AMCO INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

This case involves a claim for insurance coverage by Defendant Lauren Spencer and certain of its employees under a CGL policy of insurance issued by Plaintiff AMCO. AMCO has been defending the Lauren Spencer defendants in the underlying lawsuit under a reservation of rights and seeks a judicial declaration that it is no longer obligated to do so. The underlying lawsuit is a copyright infringement claim involving jewelry (breed-specific dog pins).

Defendant Harris (Plaintiff Harris in the underlying case) sued the Lauren Spencer defendants based on the claim that the Lauren Spencer defendants sold knock-offs of his pins. The AMCO policy does not cover copyright infringement. However, because Harris mentions the word "advertisement" in his complaint, Lauren Spencer believes it is entitled to coverage based on the limited extension of coverage in the policy for "infringing another's copyright … in your advertisement." In this case, however, the only thing that Lauren Spencer did was take its own pictures of the knock-off jewelry it was selling and put the pictures in a catalog and on a website. Because the mere depiction of an infringing product is not "advertising injury" sufficient to trigger coverage under the CGL, summary judgment for AMCO is warranted.

**STATEMENT OF UNDISPUTED FACTS**

Defendant Lauren Spencer, Inc. (formerly operated under the name OTC, Inc.) is an Ohio corporation with its principal place of business in Powell, Ohio. *See* Joint Submission of Undisputed Facts (filed manually by the parties with exhibits on Feb. 1, 2007) (Doc. 19) (hereinafter "Stipulation") at ¶ 1. At all pertinent times, Lauren Spencer, Inc. employed Defendants Bowen Lee, Shirley Lee, and Popphie Lee (Lauren Spencer, Inc. and the Lees are hereinafter collectively referred to as "Lauren Spencer"). Stipulation at ¶¶ 4-6.

"Lauren-Spencer is in the costume jewelry business. Lauren-Spencer does not manufacture any goods. Rather, Lauren-Spencer purchases costume jewelry from manufacturers in Asia, imports the goods to the United States, and resells the goods to customers." Stipulation at ¶ 7. Lauren Spencer did operate a retail store but offered its products for sale in three main ways: i) booths at trade shows, ii) brochures and iii) a web-site. Stipulation at ¶ 8.

On September 14, 2005, George Harris filed a lawsuit against Lauren Spencer in the United States District Court for the Southern District of Ohio, Eastern Division, case number 2:04 CV 884 ("the *Harris* lawsuit"). Stipulation at ¶ 10 and Exhibit B thereto. The *Harris* Complaint alleges "that Harris holds a copyright interest in various ornamental jewelry designs, including works depicting various dog breeds" Stipulation at ¶ 11 (citing Exhibit B, at ¶12). The *Harris* Complaint "further alleges that the Lauren-Spencer Defendants 'infringed said copyrights by marketing, advertising, and placing upon the market various molded and cast ornamental pieces which were, upon information and belief, copied directly from Plaintiff's copyrighted Works.'" Stipulation at ¶ 13 (quoting Exhibit B, at ¶ 30).

Lauren Spencer sold the allegedly infringing dog breed jewelry no earlier than February, 2004 and no later than October 5, 2004. Stipulation at ¶ 13. Lauren Spencer sold the allegedly infringing dog breed jewelry at trade shows by mounting them to display boards for potential customers to view. Stipulation at ¶ 14 and Exhibit C (phothograph exemplars of display boards).

In 2004, Lauren-Spencer ordered, received, and distributed brochures that offered Lauren Spencer products for sale, including the allegedly infringing dog breed jewelry. Stipulation at ¶ 15 and Exhibit D & E (entire 2004-05 brochure). Lauren Spencer displayed the brochures at trade shows and sent them to customers with packaged orders. Stipulation at ¶ 16.

Throughout 2004, Lauren Spencer maintained a website that offered for sale all of the

3

costume jewelry products depicted in the brochure.  Stipulation at ¶ 17.  Lauren Spencer arranged the website to correspond with the different pages in the brochure.  Stipulation at ¶ 17.  "The website contained digital photographs of each piece of costume jewelry; beneath each photograph was the product number for the respective piece of jewelry."  Stipulation at ¶ 17.  "At times in 2004, the website contained pages that depicted the dog breed jewelry (digitally photographed) that Harris contends infringes on what he claims are his copyrights."  Stipulation at ¶ 17.  "The website also contained pricing information and a 'shopping cart' page by which customers could purchase products, including the dog breed jewelry."  Stipulation at ¶ 17.  The parties have submitted Exhibit F, pages from the current website, for illustrative purposes.

Lauren Spencer purchased a commercial general liability policy, Policy No. ACP WHDO 7101414105, from AMCO for the October 21, 2003 to October 21, 2004 (hereinafter "the AMCO policy").  Stipulation at ¶ 9.  Lauren Spencer tendered the *Harris* lawsuit to AMCO for purposes of obtaining a defense and indmenity.  Stipulation at ¶ 18.  AMCO retained counsel to defend Lauren Spencer in the *Harris* lawsuit and has been so defending Lauren Spencer in the *Harris* lawsuit; however, AMCO has been providing that defense under reservation of rights based on the coverage dispute being litigated in this declaratory judgment action.  Stipulation at ¶¶19-20.

## LAW AND ARGUMENT

### I.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence before the Court demonstrates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Because this action is before this Court

based on diversity, the substantive law of Ohio applies to the analysis of the AMCO Policy. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).

## II.     OHIO LAW APPLICABLE TO DUTY TO DEFEND

Under Ohio law, the scope of the allegations of the underlying complaint against the insured governs whether the insurer has a duty to defend. *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 162, 789 N.E.2d 1094, 1099, 2003-Ohio-3048, ¶ 17; *M/G Transport Services, Inc. v. Water Quality Ins. Syndicate*, 234 F. 3d 974, 977 (6th Cir. 2000). The insured has the burden to demonstrate that coverage exists under a policy. *Sharonville v. Am. Employers Ins. Co.* 109 Ohio St.3d 186, 191, 2006-Ohio-2180 ¶ 19. If an insured cannot establish that coverage attaches, of course, the insurer has no duty to defend. If the allegations against the insured fall within an exclusion to coverage, the insurer has no duty to defend. *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605, 710 N.E.2d 677, 678, 1999-Ohio-322. The insurer has the burden to establish application of policy exclusions.

In this case, Lauren Spencer misunderstands the initial burden. To establish coverage, Lauren Spencer must demonstrate that Harris seeks demages arising from a "personal and advertising injury," which in this case, requires Lauren Spencer to demonstrate injury arising from Lauren Spencer's "infringing" against Harris' copyright in Lauren Spencer's "advertisement." Lauren Spencer incorrectly assumes that AMCO has a duty to demonstrate that an exclusion applies. However, coverage in this case does not turn at all on the exclusionary language. Thus, Lauren Spencer must, as an initial matter, demonstrate that coverage attaches under the definition of "personal and advertising injury." Because the undisputed facts demonstrate that Lauren Spencer cannot demonstrate the requisite elements to show injury arising out of infringing in Lauren Spencer's advertsiement, summary judgment in favor of

5

AMCO is warranted.

### III. AMCO HAS NO DUTY TO DEFEND OR INDEMNIFY LAUREN SPENCER UNDER THE AMCO POLICY.

Summary judgment in favor of AMCO is warranted is this case because the AMCO policy does not provide coverage for the damages Harris seeks from Lauren Spencer. Analysis of the allegations of the underlying *Harris* Complaint together with the AMCO policy demonstrates that AMCO owes Lauren Spencer no coverage. Although the *Harris* Complaint asserts several alternative theories of liability, Harris' underlying factual contention is that Lauren-Spencer infringed his copyrights by directly copying jewelry (mostly dog pins) on which he held copyrights and by selling them as Lauren-Spencer's own works.

The AMCO policy provides coverage for claims seeking damages because of injury arising out of "[i]nfringing upon another's copyright, trade dress or slogan in your [the insured's] 'advertisement.'" The AMCO policy does not extend coverage for any other copyright infringement claim and, indeed, expressly excludes coverage for all copyright infringement except for limited coverage for infringement in the insured's "advertisement." In this case, Lauren Spencer contends that AMCO has a duty to defend because the *Harris* Complaint alleges that Lauren Spencer advertised the allegedly infringing jewelry. However, this is insufficient to trigger coverage. Rather, for coverage to attach, Lauren Spencer must demonstrate that the *Harris* Complaint alleges infringement in Lauren Spencer's advertisement—not merely that there was a product that was advertised.

The AMCO Policy provides, in pertinent part, as follows:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated

>> to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply….

Stipulation at ¶ 9, Exhibit A at 0013-0014. The AMCO policy defines personal and advertising injury as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>    a. False arrest, detention or imprisonment;
>    b. Malicious prosecution;
>    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>    f. The use of another's advertising idea in your "advertisement"; or
>    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Stipulation at ¶ 9, Exhibit A at 0023

Based on the allegations of the *Harris* lawsuit, the only applicable definition of "personal and advertising injury" is subpart (g), "Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Thus, for coverage to apply in this case, Lauren-Spencer must demonstrate that the *Harris* Complaint seeks damages from Lauren-Spencer because of injury arising out of "infringing" on Harris' copyright in Lauren-Spencer's "advertisement." The AMCO policy further confirms the limited nature of coverage for copyright infringement by including the following exclusion:

> This insurance policy does not apply to: …

  i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret

  "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

  However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

Stipulation at ¶ 9, Exhibit A at 0014.

  The policy defines "advertisement" as:

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered advertisement.

Stipulation at ¶ 9, Exhibit A at 0021.

  Referencing the applicable policy definitions, the AMCO policy provides coverage only as follows:

  We will pay those sums that the insured becomes legally obligated to pay as damages because of ["injury … arising out of … [i]nfinging upon another's copyright or trade dress … in …] ["a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters"] to which this insurance applies….

Stipulation at ¶ 9, Exhibit A (as modified by adding applicable policy definitions).

  **A.  DEPICTION OF AN INFRINGING PRODUCT DOES NOT ALLEGE AN "ADVERTISING INJURY."**

  In this case, the parties have stipulated that Lauren Spencer displayed the infringing dog

8

pins in three forums: (1) displaying the actual pins on foam core boards at trade shows; (2) via pictures in brochures; and (3) via digital pictures on a website. The parties have supplied the Court with examples of each medium. Review of each demonstrates that no text accompanied the pins or photographs of the pins. Thus, the question before this Court is whether a photograph of an infringing object constitutes infringement in advertisement. Based on well-reasoned Sixth Circuit case law, the answer, unequivocally, is no.

In *Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.*, 99 F.3d 795 (1996), the Sixth Circuit addressed whether coverage attached in a trademark and trade dress infringement case under a policy providing coverage for liability for advertising injury "caused by an offense committed in the course of advertising the insured's goods, products or services." In *Advance Watch,* the underlying litigation was brought by A.T. Cross Company ("Cross") against Advance Watch Company. *Id.* at 798. Cross' underlying complaint alleged that Advance advertised and sold certain writing instruments that imitated the "'trade dress, product design and configuration'" of Cross' writing instruments. *Id.* (citing Jt. App. at 65). Cross particularly focused on the fact that the Advance writing instruments imitated Cross' "frusto-conical top trademarks." *Id.*

Cross alleged that Advance committed statutory and common law trademark and trade dress infringement, unfair competition, and dilution. *Id.* Cross asserted causes of action under the Lanham Act and specifically alleged that Advance violated the Lanham Act by "importing, advertising, offering for sale, and selling, writing instruments which were reproductions, countefeits, copies, and colorable imitations of Cross' frusto-conical top trademarks." *Id.* Cross further alleged that Advance had published a catalog depicting the writing instruments it alleged imitated Cross' writing instruments. *Id.*

9

Advance tendered the Cross lawsuit to Travelers, its CGL insurer, but Travelers denied coverage. *Id.* at 799. Advance instituted a declaratory judgment action, wherein the court analyzed the CGL policy that obligated Travelers to defend and indemnify Advance in any action involving an "advertising injury," which was defined to include "misappropriation of advertising ideas or style of doing business" or "infringement of copyright" "committed in the course of advertsing [Advance's] goods, products, or services." *Id.* at 798. The trial court found in favor of Advance and concluded that Travelers had a duty to defend.

On appeal, the Sixth Circuit Court of Appeals reversed the trial court's decision, holding that the trial court erred as a matter of law in finding coverage under the Travelers policy. The Sixth Circuit held that Travelers, not Advance, was entitled to summary judgment. As a separate basis for concluding that the Travelers policy did not provide coverage for Cross' trade dress and trade infringement claims against Advance, the Sixth Circuit emphasized that the policy required "some nexus between the ground of asserted liability and the insured's advertising activities before there is coverage or a duty to defend." *Id.* at 806. Thus, as a fundamental matter, the third party's injury must arise from the insured's advertising activties. *Id.* Otherwise, coverage would apply whenever any third party alleged harm arising from an advertisied product—i.e., coverage would arise with respect to most claims against any insured business. *Id.* The Sixth Circuit correctly recognized that such a broad reading ignores the policy requirement that the injury must relate to advertisement—and not just the product. *Id.* For example, the Court acknowledged that mere advertisement of a product allegedly infringing a claimant's patent would not trigger the coverage under the CGL because the mere advertisement of the infringing product was not injury "caused by an offense that resulted from advertising." *Id.*

As applied to the allegations Cross made against Advance, the Sixth Circuit recognized

that Cross alleged injury not because Advance had distributed a catalog depicting writing instruments that imitated Cross' writing instruments but because Advance was distributing knock-off writing instruments. The harm arose from the knock-off pens—not the catalog. The Court explained:

> It is true that a trademark, unlike a patent, can be infringed in an advertisement, but we find a broader requirement properly stated in these cases which Advance cannot satisfy in this case. The gravamen of Cross' complaint was that the Advance Pierre Cardin writing instruments too closely resembled Cross' writing instruments, thereby infringing Cross' marks, which consist of the shape and appearance of the writing instruments themselves. It is true that Cross complained that Advance was, *inter alia,* advertising the infringing writing instruments, that Cross exhibited a copy of Advance's catalog to the complaint filed in the Cross action, and that Cross prayed, *inter alia,* that Advance be enjoined from advertising the infringing writing instruments, and that Advance be required to deliver for destruction all infringing advertisements and catalogs. <u>However, it was not Advance's advertising in itself which provoked Cross' claim; it was the fact that in each advertisement which depicted a Pierre Cardin writing instrument, there was, according to Cross, a writing instrument deceptively similar in shape and appearance to Cross' writing instruments</u>.
>
> Contrary to the district court's conclusion, we conclude that even if Advance could be said to have misappropriated Cross' advertising ideas or style of doing business, it cannot reasonably be said to have done so in the course of advertising its writing instruments, when it is the shape and appearance of the writing instruments themselves which Cross claimed to have caused injury. Advance argues that the appearance of its Pierre Cardin writing instruments was in itself advertising, but this argument proves too much, for it would invoke advertising injury coverage and the duty to defend whenever a product is merely exhibited or displayed. We conclude as a matter of law that the "committed in the course of advertising" policy language requires more, and that Travelers was entitled to summary judgment on this ground.

*Id.* at 806-807 (emphasis added).

The same reasoning applies in this case. The Sixth Circuit's reasoning confirms that the AMCO policy does not provide coverage for Lauren Spencer. Although Harris' Complaint does use the word "advertise," the alleged injury is neither the brochure nor the website. The alleged injury is the infringing product—the dog pins. As made clear by *Advance Watch,* Lauren

11

Spencer cannot establish the requisite nexus—there is simply no "advertising injury." Harris does not allege injury because Lauren Spencer had brichures printed or operated a website. Rather, Harris' alleged injury derives from the knock-off products themselves. Thus, the mere depiction of these knock-off dog pins does in photographs take by the insured does not trigger coverage.

      B.      **COVERAGE DOES NOT ATTACH BECAUSE THERE WAS NO INFRINGEMENT <u>IN</u> LAUREN SPENCER'S ADVERTISEMENT.**

In this case, Lauren Spencer assumes that its brochure and website meet the AMCO policy's definition of "advertisement"—a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Even assuming the mere picture of the infringing product meets this definition, Lauren Spencer cannot establish that any copyright infringement occurred in its advertisement or that Harris has alleged such.

Coverage attaches only if Harris seeks damages for injury arising out of Lauren Spencer's "[i]nfringing upon another's copyright, trade dress or slogan <u>in</u> [Lauren Spencer's] 'advertisement.'" Stipulation at ¶ 9, Exhibit A at 0023 (emphasis added). Lauren Spencer took pictures of allegedly infringing products—not the actual products. The photographs were original works and not themselves copyrighted. Because the brochure and website contained no text, music, slogan, or decoration, no aspect of the brochure or website contained copyrighted material. Thus, every element of the brochure and website was original to Lauren Spencer and created by Lauren Spencer. The only issue was that Harris alleged that Lauren Spencer displayed original photographs of infringing products. This is not infringing <u>in</u> Lauren Spencer's advertisement. Stated differently, there is nothing within the brochure or website that is infringing material. Harris simply alleges that Lauren Spencer's mere act of advertising any

12

product that is a kock-off of his is a copyright violation—but again, such general allegations are insufficient to state the requisite nexus to advertising injury necessary to trigger coverage under the CGL.

Even if the use of photographs of the infringing products could constitute infrigment in advertising, a separate exclusion precludes coverage. Exclusion (l) excludes coverage for use of another's product to mislead potential customers. Exclusion (l) states that the policy does not apply to "'[p]ersonal and advertising injury" arising out of the unauthroized use of another's name or product in your email address, domain name or metatag, or any other similar tactics to mislead another's potential customers." Thus, to the extent that the mere display of photographs of infringing products constitutes a "personal and advertising injury," coverage is excluded under exclusion (l) as a "tactic[] to mislead another's potential customers." This exclusion would apply in this case were the only alleged infringement issue is the depiction of the alleged knock-off product. Accordingly, Lauren Spencer cannot demonstrate infringement <u>in</u> its advertisement.

## C. MERE DEPICTION OF PHOTOGRAPHS IS NOT AN "ADVERTISEMENT"

The AMCO policy provides a specific definition of "advertisement," and Lauren Spencer must demonstrate that the infringement occured in its "advertisement" before coverage attaches. An advertisement is "a <u>notice</u> that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Stipulation at ¶ 9, Exhibit A at 0021 (emphasis added). Here, Lauren Spencer cannot demonstrate the involvement of any "advertisement" because there was no "notice" involved. First, "notice" "is defined as: '1. information, warning or announcement of something impending; notification: *to give notice of one's intentions.* 2. a written or printed statement conveying such information or warning: *to post a notice.*'" *American Home Assur. Co. v.*

13

*Selective Group, Inc*., Mich. App. 266774 (June 20, 2006), 2006 WL 1691152, *3 n.1 (citation omitted).  Thus, as an initial matter, to constitute an "advertisement," the item must act as an announcement of something—it must be a written or printed statement conveying information.  Here, the item contained no written statement nor conveyed any information.

Moreover, there was no statement about any goods or services.  As well, the depiction of a product in a catalog brochure and on a catalog website can hardly be said to be a broadcast for the purpose of attracting customers.  Rather, it is a service provided to the customers once the customers seek out Lauren Spencer's products.  Accordingly, Lauren Spencer cannot demonstrate that the injury at issue even involved an "advertisement" as defined by the AMCO policy.

## CONCLUSION

For each of these reasons, AMCO is entitled to a declaration that it has no further duty to defend the Lauren Spencer defendants or duty to indemnify in the *Harris* lawsuit.  AMCO does not waive any additional coverage defenses it has.  The parties agreed to address certain coverage issues at this early pleading stage given the parties' stipulations.  However, AMCO specifically reserves all coverage defenses available to it under the AMCO policy and applicable law.

Respectfully submitted,

*/s/ Amy S. Thomas*
Amy S. Thomas     (0074380)
**Reminger & Reminger Co., L.P.A.**
65 East State, Street, 4th Floor
Columbus, Ohio  43215
(614) 232-2627 - Direct Dial
(614) 232-2410 - Facsimile
E-mail:  athomas@reminger.com
*Attorney for Plaintiff AMCO Insurance Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**Signature:**

**/s/ Amy S. Thomas**
Amy S. Thomas (0074380)