## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

AMCO INSURANCE COMPANY,       :

                             :      Case No. C2-06-472

        Plaintiff,           :

                             :      Judge Frost

    v.                             :

                             :      Magistrate Judge King

LAUREN-SPENCER, INC., et al.,      :

                             :

        Defendants.        :

## MEMORANDUM OF DEFENDANTS LAUREN-SPENCER, INC., SHIRLEY LEE, BOWEN LEE, AND POPPHIE LEE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.**     **PRELIMINARY STATEMENT**

In its cross-motion for summary judgment, AMCO Insurance Company ("AMCO") makes the following missteps:

- it suggests, without citation to any legal authority, that the publication of photographs that depict infringing products cannot constitute an act of copyright infringement;

- it asserts that the website, brochures, and display boards used by Lauren-Spencer, Inc. ("Lauren-Spencer") are not advertisements because they do not contain "printed or written statements," even though those terms do not appear in the commercial general liability policy ("Policy") that AMCO sold to Lauren-Spencer;

- it confuses the "nexus" that is required, under the Policy language and applicable legal authorities, between the copyright infringement injury asserted by George Harris ("Harris") and the advertising activities of Lauren-Spencer;

Dockets.Justia.com

- it relies exclusively on non-Ohio legal authorities (including a Sixth Circuit decision applying Michigan law), even though Ohio law indisputably governs the interpretation of the Policy; and

- it invokes an exclusion in the Policy, even though that provision was never mentioned in the reservation of rights letter, is not cited in the Complaint, and is otherwise inapplicable.

When these miscues are evaluated properly, however, the transparency of AMCO's attempt to evade its contractual commitments to its insureds becomes evident.   As explained more fully below, the undisputed factual record, the plain meaning of the Policy language, and the applicable legal authorities all compel the same result:  Lauren-Spencer and its employees, Shirley Lee, Bowen Lee, and Popphie Lee (collectively, "the Lauren-Spencer Defendants"), are entitled to insurance coverage for any liabilities they may incur related to the alleged copyright infringement claims asserted against them by Harris.[1]

## II.   ARGUMENT

Under Ohio law, courts employ a four-part test to determine if an insured is entitled to coverage under the "advertising injury" provisions of a CGL policy:  (1) does the underlying claimant's injury fall within one of the enumerated "offenses" listed in the advertising injury provisions of the policy; (2) did the insured engage in "advertisement," as that term is defined in the policy; (3) is there "a causal connection" between the claimant's injury and the insured's

---

[1]      Contrary to AMCO's assertion, the Lauren-Spencer Defendants neither "misunderstand" nor have disputed that an insured has the initial burden of demonstrating that coverage exists under a policy.  See Plaintiff AMCO Insurance Company's Motion for Summary Judgment ("AMCO Br.") at 5.  Both AMCO's reservation of rights letter and Complaint focused on the potential applicability of certain Policy exclusions, most notably Exclusion (i).  Facts at ¶ 20 & Ex. I; Complaint ¶¶ 46-47.  Consequently, the discussion in the Lauren-Spencer Defendants' Motion for Summary Judgment ("Lauren-Spencer Br.") focused on the inapplicability of that particular exclusion.  Now that AMCO has raised these additional issues, see AMCO Br. at 5 ("[C]overage in this case does not turn at all on the exclusionary language.  Thus, Lauren Spencer must, as an initial matter, demonstrate that coverage attaches under the definition of 'personal and advertising injury.'") (emphasis added), the Lauren-Spencer Defendants welcome this opportunity to respond.

2

advertisements; and (4) do any exclusions apply to preclude coverage.  Westfield Cos. v. O.K.L.
Can Line, 155 Ohio App.3d 747, 754, 2003-Ohio 7151 at ¶ 12 (Hamilton Cty. 2003); see also
Westfield Ins. Co. v. Factfinder Marketing Research, Inc., 168 Ohio App. 3d 391, 2006-Ohio
4380 (Hamilton Cty. 2006) (applying O.K.L. Can Line analytical framework).

As explained more fully below and in the Lauren-Spencer Defendants' Motion for
Summary Judgment, this four-part test is readily satisfied in this case.  First, Harris contends that
Lauren-Spencer infringed his purported copyright interests (a disputed matter in the underlying
lawsuit, but accepted solely for purposes of the pending motions) -- plainly, an enumerated
"offense" under the Policy.  Second, the Lauren-Spencer Defendants engaged in
"advertisement."  Third, there is a sufficient causal connection between any injury Harris may
sustain to his purported copyright interests and the Lauren-Spencer advertisements.  Fourth, none
of the Policy exclusions apply.  Accordingly, the Lauren-Spencer Defendants are entitled to
advertising injury coverage for Harris' claims.  AMCO's cross-motion for summary judgment
should be denied.

A.     **Photographs That Depict Infringing Products are Covered under the Policy as Copyright Infringement**

It is undisputed that the Policy "offense" applicable to Harris' claims is the enumerated
offense of "Infringing upon another's copyright, trade dress or slogan in your advertisement."
See AMCO Br. at 12.  In its attempt to characterize Harris' alleged injury in a way that would
fall outside of this provision, AMCO distinguishes between photographic depictions of allegedly
infringing products that are used in advertising, and allegedly infringing photographs that are
used in advertising.  In AMCO's view, only the latter are covered under the terms of the Policy.
AMCO Br. at 12.  AMCO further suggests that a photograph can infringe upon another's
intellectual property interests in two different ways:  (1) when the items depicted in the

photographs are the actual products of another; or (2) when the photographs themselves were copyrighted.  Id.  ("Lauren[-]Spencer took pictures of allegedly infringing products – not the actual products.  The photographs were original works and not themselves copyrighted.").  Because Lauren-Spencer did neither, AMCO contends that Harris has not sustained a covered injury.  Both of AMCO's assertions are wrong.

> **1.    As a matter of substantive copyright law, distributing photographs of allegedly infringing products constitutes a separate instance of infringement.**

AMCO's bald assertion that "there is nothing within the brochure or website that is infringing material" because Harris' only allegation is that "Lauren[-]Spencer displayed original photographs of infringing products," see AMCO Br. at 12 (emphasis added), is factually unsubstantiated, is contrary to principles of copyright law, and is belied by Harris' own complaint.

A copyright owner has the exclusive right to create a derivative work, 17 U.S.C. §106(2), which is defined as "a work based upon one or more preexisting works."  17 U.S.C. §101.  Additionally, a copyright owner of a pictorial, graphic, or sculptural work has the right to display that work publicly.  17 U.S.C. §106(5).

Thus, if Harris has a copyright interest in his dog pin designs -- an issue the Lauren-Spencer Defendants hotly contest in the underlying Harris lawsuit -- then he would have the exclusive right to display those designs through photographs.  To the extent the Lauren-Spencer Defendants were to use photographic depictions of infringing products, then that would constitute a separate instance of copyright infringement.

Indeed, under well-settled principles of copyright law, when one party copies someone else's copyrighted goods without the permission of the copyright holder, takes photographs of

the infringing goods, and displays those photographs on the Internet, that photographic display violates the copyright holder's exclusive right to display its works. See, e.g., Video Pipeline, Inc. v. Buena Vista Home Enter., Inc., 192 F. Supp. 2d 321, 334 (D.N.J. 2002) ("the display of a visual image of a copyrighted work would be an infringement if the image were transmitted by any method (by closed or open circuit television for example, or by a computer system) from one place to members of the public located elsewhere..... Congress intended for copyright infringement to occur when images of a copy of copyrighted work are displayed to members of the public located other than where the copy is located."); Sony Computer Entertainment America Inc. v. Gamemasters, 87 F. Supp. 2d 976, 989 (N.D. Cal. 1999) ("The photocopies are derivative works used to promote sales of defendant's product which supplant purchaser's demand for plaintiff's product.... [P]laintiff is well within its rights in prohibiting such use.").

While it is true that Lauren-Spencer created the website and the brochures that contained photographs of the allegedly infringing jewelry, it is not necessarily true, as AMCO asserts, that "every element of the brochure and website was original to Lauren[-]Spencer and created by Lauren[-]Spencer." AMCO Br. at 12. To the extent that Lauren-Spencer used materials in its brochures and on its website that infringed upon the intellectual property interests of another (*e.g.*, using pictures of products that allegedly infringed upon Harris' purported copyrights), then Lauren-Spencer would be utilizing materials that were not "original to Lauren-Spencer."

Indeed, this is the gravamen of Harris' complaint. Harris alleges that Lauren-Spencer infringed his purported intellectual property rights by using photographs of the Lauren-Spencer dog pins in Lauren-Spencer's advertisements. See, e.g., Facts at ¶ 10 & Ex. B (¶¶ 22, 30, 31).

   2. **The photographs in the brochures and on the website constitute infringement, in Lauren-Spencer's advertisement, of Harris' alleged copyright interests.**

   In drafting its Policy, AMCO promised to cover injuries arising from "infringing upon another's copyright … in your advertisement." Facts at ¶ 9 & Ex. A (pg. 0023). This language cannot support the distinction that AMCO now advances -- a distinction between using allegedly infringing photographs in advertising (which AMCO concedes <u>is</u> covered), and using photographic depictions of allegedly infringing products in advertising (which AMCO contends is <u>not</u> covered).

   As noted above, this distinction does not hold water as a matter of substantive copyright law because both uses constitute infringement. See *supra,* § II.A.1. Furthermore, if AMCO had wanted to limit coverage to only certain types of copyright infringement, it could have used clear and precise Policy language to accomplish that objective. Having failed to do so, AMCO cannot properly ask this Court to re-write its contractual obligations. <u>See</u> <u>Gomolka v. State Automobile Mut. Ins. Co.</u>, 70 Ohio St. 2d 166, 168 (1982), <u>citing</u> <u>Motorists Ins. Co. v. Tomanski</u>, 27 Ohio St. 2d 222, 226 (1970) (courts should not read into an insurance policy "a meaning not placed there by an act of the parties."); <u>see</u> <u>also</u> <u>Schwartz v. CNA Ins. Co.</u>, 406 F. Supp. 2d 844, 847 (N.D. Ohio 2005) (same).

   Moreover, the allegedly infringing photographs were clearly used "<u>in</u> [Lauren-Spencer's] advertisements." The photographs of the allegedly infringing pins appeared in Lauren-Spencer's brochures and on its website. <u>See</u> Facts at ¶¶ 15, 17 & Exs. D, F. The photographs were intended to drive sales of the dog breed jewelry and served to accomplish that objective. <u>Id.</u> at ¶¶ 8, 15, 17 & Ex. E.

   Finally, because Lauren-Spencer did <u>not</u> manufacture the allegedly infringing jewelry, any injury Harris may have sustained due to Lauren-Spencer's conduct necessarily arose from

infringement in these advertisements. For instance, if Lauren-Spencer had bought infringing pins from China and left them in a warehouse, Harris would have no claim of copyright infringement against the Lauren-Spencer Defendants. To the extent Harris has any claims of copyright infringement at all against the Lauren-Spencer Defendants, such claims are grounded upon Lauren-Spencer's promotion and marketing activities, including using photographs of allegedly infringing pins in its advertisements, in order to drive sales.

In short, AMCO's assertion that "original photographs of infringing products" do not constitute "infringement in advertisement," see AMCO Br. at 12, is mere semantics. AMCO's contention has been rejected by other courts, violates well-settled copyright principles, and is contrary to the Policy's plain language. Accordingly, the photographs of Lauren-Spencer's allegedly infringing products, which bore images of designs that Harris claims to have copyrighted, clearly fall within the Policy's enumerated offense of "infring[ement] upon another's copyright . . . in your advertisement."

**B.** **Lauren-Spencer's Display Boards, Brochures, and Website Constitute "Advertisements," as Defined by the Policy**

**1.** **AMCO's argument that "advertisements" must contain "written or printed statements" is contrary to the language of the Policy.**

AMCO contends that an "advertisement" entitled to coverage under the Policy must contain a "written or printed statement" that conveys information. AMCOBr . at 14. ("[A]s an initial matter, to constitute an 'advertisement,' the item must act as an announcement of something -- it must be a written or printed statement conveying information. Here, the item contained no written statement nor conveyed any information."). AMCO is wrong.

When AMCO drafted the Policy, it defined "advertisement" as follows:

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

Facts at ¶ 9 & Ex. A (pg. 0021).[2]  Clearly, nowhere in the Policy's definition of "advertisement"

is it mandated that an advertisement contain  "written or printed statements," as AMCO now

contends.  If AMCO had wanted to limit the Policy coverage only to advertisements that

contained written or printed statements, it could have easily inserted language to that effect in the

Policy.  However, AMCO chose not to do so.  Because the drafter of the Policy chose not to

include limiting language in the Policy's definition of "advertisement," this Court should not re-

write the Policy for AMCO's benefit.

Recognizing that it failed to draft language that would accomplish its current litigation

objective, AMCO asks this Court to narrowly construe the term "notice," as used in the Policy's

definition of "advertisement."  AMCO Br at 13 -14.  Relying upon a Michigan intermediate

appellate decision that cites a dictionary definition, AMCO argues that "notice" should be

construed to mean "a written or printed statement" that conveys information.  Id. (citing

American Home Assur. Co. v. Selective Group, Inc., No. 266774, 2006 WL 1691152, *3 (Mich.

App. June 20, 2006) (citing definition of "notice" provided by Random House Webster's College

Dictionary).

AMCO, however, focuses solely on the secondary definition of "notice" and ignores the

primary dictionary definition, i.e., "information, warning or announcement of something

impending."  Id.  This aspect of the definition places no limitation upon the manner in which

---

[2]    AMCO's definition of "advertisement" also includes two additional provisions that have particular
applicability in this case:

For the purposes of this definition:

a.    Notices that are published include material placed on the Internet or on other similar
electronic means of communication; and

b.    Regarding web-sites, only that part of a web-site that is about your goods, products or
services for the purposes of attracting customers or supporters is considered
advertisement.

information about an impending event can be conveyed -- it encompasses oral, visual, not just written, announcements.

Moreover, limiting covered "advertisements" to only those things that contain "written or printed statements" would be nonsensical in light of current commercial realities. If advertisements were required to contain "written or printed statements," radio spots, which by their very nature do not convey written or printed messages, would be excluded. Likewise, Internet and television ads would only be covered if they contained written messages. Because video advertisements without printed graphics can clearly convey a message and resonate with viewers (just as radio advertisements can move listeners), AMCO's suggestion that "advertisements" must contain written or printed statements is contrary to modern commercial practices. See also Adolfo House Distributing Corp. v. Travelers Prop. And Cas. Ins. Co., 165 F. Supp. 2d 1332, 1338 (S.D. Fla. 2001) ("The Court is puzzled as to why the concept of 'advertising' might not logically embrace non-verbal conduct, graphic or symbolic communication. As the term is commonly understood, 'advertising' simply means the 'action of calling something to the attention of the public.'") (citations omitted). Again, if AMCO had wanted to limit the types of covered advertisements, it could, and should, have used language to accomplish that end.

>        **2.**    **AMCO's suggestion that Lauren-Spencer's display boards,**
>                **brochures, and website do not constitute "advertisements" is baseless.**

AMCO also suggests that, even if the Policy's definition lacks a requirement of "written or printed" statement, the definition of "advertisement" is still not satisfied in this case. AMCO Br. at 14. This suggestion is unfounded.

Under well-settled principles of Ohio law, this Court must give words in an insurance policy their plain and ordinary meanings.[3]  As noted above, the Policy defines "advertisement" as a notice directed to the public "for the purpose of attracting customers."  Facts at ¶ 9 & Ex. A (pg. 0021).

Lauren-Spencer's display boards, brochures, and website unquestionably constitute "advertisements" as defined in the Policy; they were directed to the general public for purposes of attracting customers.  The display boards, which were adorned with the dog breed jewelry in which Harris claims a copyright interest, were used at trade shows to elicit sales.  Facts at ¶ 14 & Ex. C.  The product brochures, which included photographs of the dog breed jewelry, were distributed to the public for the purpose of eliciting telephone, fax, and Internet orders.  Id. at ¶¶ 8, 15, 16 & Exs. D, E.  The Lauren-Spencer website, which (at the time) included pages with digital photographs of the dog breed jewelry, was another vehicle through which Lauren-Spencer solicited sales.  Id. at ¶ 17 & Ex. F.[4]  Thus, the undisputed evidence establishes that Lauren-Spencer's use of photographs of the allegedly infringing jewelry on its website, distribution of brochures containing similar photographs, and exhibition of jewelry pins on display boards all constitute "advertisements" as defined in the Policy.

---

[3]     See Cincinnati Indemn. Co. v. Martin, 85 Ohio St. 3d 604, 607 (1999), citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd., 64 Ohio St. 3d 657 (1992) ("It is well established that when the language in an insurance policy is clear and unambiguous, we must enforce the contract as written and give the words their plain and ordinary meaning."); Schwartz v. CNA Ins. Co., 406 F. Supp. 2d 844, 847 (N.D. Ohio 2005) (applying Ohio law), citing Motorists Mut. Ins. Co. v. Tomanski, 27 Ohio St. 2d 222 (1971) ("Courts are bound by the unambiguous terms of an insurance contract and cannot 'read into the contract meaning which was not placed there by an act of the parties.'"); Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co., 159 Ohio App. 3d 590, 596 (Montgomery Cty. 2005) (internal citations omitted) ("A court must give undefined words used in an insurance contract their plain and ordinary meaning… [i]f a term is clear and unambiguous [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

[4]     Indeed, the Policy expressly recognizes that "electronic means of communication," including websites, which are intended to attract customers, are covered "advertisements." See supra, fn. 2; Facts at ¶ 9 & Ex. A (pg. 0021).  See also O.K.L. Can Line, 155 Ohio App. 3d at 755 ("A web page is advertising under any definition").

In an attempt to overcome this undisputed evidence, AMCO asserts, in conclusory fashion, that "the depiction of a product in a catalog brochure and in a catalog website can hardly be said to be a broadcast for the purposes of attracting customers." Id. at 14. But why can't brochures and websites -- and the items depicted therein -- be used to attract customers? Indeed, why else would retailers go to the expense of developing and distributing brochures and/or creating and maintaining websites if they were not intended to attract customers? AMCO never explains.

Instead, AMCO contends that the photographs on the website and in the brochures are "service[s] provided to the customer once the customers seek out Lauren[-]Spencer's products." AMCO Br. at 14 (emphasis added). Again, AMCO provides no factual or legal support for this contention. The omission is not surprising. The display boards, brochures, and website exist for perusal both by former purchasers of Lauren-Spencer goods and by potential, new customers to the Lauren-Spencer product line. See Facts at ¶¶ 8, 14-17 & Exs. C-F. Moreover, because the display boards, brochures, and website are shown to potential customers prior to the placing of orders, they are obviously designed to do more than merely provide a "service" to purchasers. Id. For these reasons, Lauren-Spencer clearly engaged in "advertising" activities.

**C.    A Sufficient "Causal Connection" Exists Between Harris' Alleged Injury to his Copyright Interests and Lauren-Spencer's Advertisements**

**1.    Under Ohio law, the requisite "causal connection" is satisfied if the advertising "materially contributes" to the injury.**

As the O.K.L. court suggested, the consideration of this third prong in the analysis can be "more difficult." 155 Ohio App. 3d at 756. The language in the Policy, which is standard insurance industry language, requires that the advertising injury "aris[e] out of . . . infringement upon another's copyright . . . in [the insured's] advertisement." Facts at ¶ 9 & Ex. A (pg. 0023).

Some courts have struggled to define precisely the nature of the requisite causal connection between the claimant's injury and the insured's advertising activity.

As the <u>O.K.L.</u> court noted, however, Ohio courts have consistently interpreted this "arising out of" language broadly to mean "flowing from," "having its origin in," or "growing out of." 155 Ohio App. 3d at 756 (Ohio citations omitted). Thus, under Ohio law, the advertisement need not be the only cause of the injury; it is sufficient if the advertising "materially contribute[s]" to the injury. <u>Id.</u>, <u>citing</u> <u>R.C. Bigelow v. Liberty Mut. Ins. Co.</u>, 287 F.3d 242, 248 (2nd Cir. 2002); <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 750 n.8 (3rd Cir. 1999); <u>see</u> <u>also</u> <u>Factfinder</u>, 168 Ohio App. 3d at 403 (finding sufficient nexus when insured's advertising activities caused claimant's damages "at least in part").

Despite AMCO's contention to the contrary,[5] the undisputed facts clearly establish that Lauren-Spencer's advertising activities "materially contribute[d]" to any alleged infringement of Harris' purported copyright interest. First, Lauren-Spencer does not manufacture any goods. Facts at ¶ 7.[6] Thus, the <u>only</u> <u>way</u> that the Lauren-Spencer Defendants could have infringed on Harris' purported copyright was through their marketing and promotional activities. As noted above, if the Lauren-Spencer Defendants had purchased infringing jewelry from China and kept those goods in a warehouse, Harris would have no basis to claim infringement by Lauren-Spencer. Only through promoting, marketing, and offering these goods for sale did Lauren-Spencer even arguably infringe upon Harris' purported copyright interests.

---

[5]     <u>See</u> AMCO Br. at 11-12 ("Harris does not allege injury because Lauren Spencer had brichures [sic] printed or operated a website. Rather, Harris' alleged injury derives from the knock-off products themselves.").

[6]     In this regard, AMCO's assertion that "Harris' underlying factual contention is that Lauren-Spencer infringed his copyrights by <u>directly</u> <u>copying</u> jewelry (mostly dog pins) on which he held copyrights and by selling them as Lauren-Spencer's own works," AMCO Br. at 6, is both unsubstantiated and wrong.

Moreover, it is apparent from his complaint that Harris recognizes this reality.  Harris does not allege simply that the imported pins caused him injury.  Rather, Harris specifically claims that his injury stemmed from Lauren-Spencer's advertising the dog breed jewelry on the display boards, in its website, and in its brochures.  For instance, the complaint describes Lauren-Spencer as "a business which markets, advertises and offers for sale" jewelry.  See Facts at ¶ 10 & Ex. B (¶ 20) (emphasis added).  The Harris complaint further asserts that the Lauren-Spencer Defendants have marketed, advertised, and offered for sale allegedly infringing goods.  Id.; Ex. B (¶¶ 21-22) (emphasis added).  Accordingly, Lauren-Spencer's advertising activities -- activities that included the exhibition of display boards, the distribution of brochures, and the posting of photographs on its website -- "materially contributed" to Harris' alleged injury.

This conclusion is further supported by decisions from other jurisdictions on nearly identical factual records.  For instance, in Western American Ins. Co. v. Moonlight Design, Inc., 95 F. Supp. 2d 838 (N.D. Ill. 2000), the insured sought coverage for claims asserted by a third party that the insured had infringed on copyrighted bridal dress designs.  Id. at 840.  Similar to this case, the allegedly infringing dresses were produced in Taiwan and shipped to the insured in the United States, whereupon the insured took pictures of the dresses for use in its advertisements.  Id. at 840-844.  Like AMCO, the insurer argued that the claimant's injuries were not caused by the insured's advertising activities because

> the acts of copyright infringement alleged in the [claimant's] lawsuit occurred in the course of [the insured]'s design, manufacture and sale of bridal dresses, and not in the course of any advertising activity.  [The insurer] concedes that [the insured] advertised its infringing bridal dresses, but argues that this advertising activity was not the genesis of the [claimant's] lawsuit.  Rather, the root of the [claimant's] lawsuit was the infringing design and sale of the dresses.

Id. at 843.

The court rejected the insurer's argument and determined that the requisite causal connection did exist between the insured's advertising and the claimant's injuries As the court observed, the copyright infringement claims also contained "numerous allegations pertaining to [the insured]'s advertising activities." Id. Specifically, the insured had "published advertisements, inter alia, in *Bridal Guide* comprising photographs of its infringing bridal dresses." Id. Accordingly, the court determined that the insured was entitled to coverage for advertising injury liability. Id. at 844; see also Interface, Inc. v. The Standard Fire Ins. Co., No. 1:99-CV-1485-MHS, 2000 WL 33194955, *4 (N.D. Ga. Aug. 15, 2000) (finding that the advertisements and promotional materials did not merely expose injury, but actually infringed claimant's copyrights when the ads "bore images" of the insured's copy of the carpet pattern that claimant allegedly copyrighted).

2.       **The determination in Advance Watch that the advertising activities must be the primary cause of the claimant's injury is inapplicable here.**

AMCO relies heavily upon the determination in Advance Watch Co. v. Kemper Nat. Ins. Co., 99 F.3d 795 (6th Cir. 1996), that the policy requirement that infringement be "committed in the course of advertising" requires more than simply advertising the infringing product. AMCO Br. at 9-12. Advance Watch involved trademark infringement, not copyright infringement in which the display of the advertisement itself constitutes infringement. In Advance Watch, the court found that the insured did not infringe the third-party's trademark and trade dress interests "in the course of advertising" its pens, even though the insured published advertisements displaying the infringing pens. According to the Advance Watch court, the appearance and shape of the infringing product, and not the advertising, caused the alleged injury. Id. at 807. AMCO's reliance upon Advance Watch is misplaced for several reasons.

First, the discussion in <u>Advance Watch</u> about the requisite causal connection is dicta. The Sixth Circuit's primary reason for reversing the district court was its conclusion that claims of trademark and trade dress infringement did not fit within the policy's enumerated "offense" of "misappropriation of advertising ideas or style of doing business."  99 F.3d at 800-06. [7]

Second, other courts have rejected the <u>Advance Watch</u> causation analysis as overly restrictive.  <u>See, e.g.</u>, <u>R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.</u>, 287 F.3d 242, 247-49 (2nd Cir. 2002) (finding that "where an advertising injury is alleged, the relevant causation issue with regard to insurance coverage is not whether 'the injury could have taken place without the advertising' but 'whether the advertising did in fact contribute materially to the injury'") (emphasis in original) (citations omitted); <u>see also</u> <u>Pizza Magia Intern., LLC v. Assurance Co. of Am.</u>, 447 F. Supp. 2d 776, 773-74 (W.D. Ky. 2006) (rejecting <u>Advance Watch</u> causation analysis, applying Kentucky law, and finding that causal connection is satisfied when advertising activities "could have contributed" to claimant's injury); <u>Ryland Group, Inc. v. Travelers Indem. Co. of Illinois</u>, No. Civ. A-00-CA-233 JRN, 2000 WL 33544086, *6 at n. 9 (W.D. Tex. Oct. 25, 2000) (rejecting <u>Advance Watch</u> causation analysis, applying Texas law, and finding that causal connection is satisfied when advertising activities "provoked" copyright infringement).

Third, and perhaps most importantly, <u>Advance Watch</u> applied Michigan -- not Ohio -- law.  <u>Advance Watch</u>, 99 F.3d at 799.  As noted above, courts applying Ohio law have rejected the strict policy reading in <u>Advance Watch</u>.  For instance, in <u>O.K.L.</u>, the court rejected the insurer's <u>Advance Watch</u> argument -- the exact argument that AMCO now asserts -- that the underlying third party claims "arose from the infringement, and not from the advertisement of the infringing product."  <u>Id.</u> at 756.

---

[7]      See <u>Cincinnati Ins. Companies v. Pestco, Inc.</u>  374 F. Supp. 2d 451, 458-459 (W.D.Pa. 2004), for a partial list of the cases that have rejected this aspect of <u>Advance Watch</u>.

> If we were to apply this rule [from <u>Advance Watch</u>], the advertising-injury
> coverage with respect to trade dress would be illusory -- the insured would always
> be foreclosed from meeting the causation requirement.  Surely this was not the
> intent of the parties.

<u>Id.</u> at 756; <u>see</u> <u>also</u> <u>Factfinder Marketing</u>, 168 Ohio App. 3d at 401 (refusing to follow <u>Advance</u>

<u>Watch</u>).  As noted above, courts applying Ohio law, as both parties agree this Court should, have

adopted a broader causal connection requirement -- the insured is entitled to coverage if its

advertising activities "materially contribute[d]" to the claimant's injuries.  Because Ohio law

regarding what is necessary to establish the requisite causal nexus materially differs from the

<u>Advance Watch</u> court's analysis of Michigan law, AMCO's reliance on that decision is

misplaced.

### D.    **The Policy's Exclusions Do Not Bar Coverage**

#### 1.    **Exclusion (l) is inapplicable.**

In its cross-motion for summary judgment, AMCO asserts that "coverage in this case

does <u>not</u> turn at all on the exclusionary language" of the Policy, AMCO Br. at 5 (emphasis

added), and then, paradoxically, later claims that an exclusion in the Policy bars coverage in this

matter.  <u>Id.</u> at 13.  Furthermore, AMCO contends, <u>for</u> <u>the</u> <u>very</u> <u>first</u> <u>time</u>, that the exclusion

entitled "Unauthorized Use of Another's Name or Product" bars the Lauren-Spencer Defendants'

demand for coverage.  AMCO never mentioned this exclusion in its reservation of rights letter,

Facts at ¶ 20 & Ex. I; likewise, AMCO's Complaint makes no reference whatsoever to that

exclusion, Complaint, ¶¶ 39-40.  Assuming that AMCO's reservation of rights letter properly

preserved its right to deny coverage on this basis and ignoring AMCO's failure to cite this

exclusion in its Complaint, AMCO's argument remains meritless.

Exclusion (l) bars coverage for "'[p]ersonal and advertising injury' arising out of the

unauthorized use of another's name or product in your email address, domain name or metatag,

or any other similar tactics to mislead another's potential customer."  Facts at ¶ 9 & Ex. A (pg. 0015).  By its own terms, therefore, this provision applies <u>only if</u> another's product (or name) was used in an unauthorized fashion in an "email address, domain name, metatag"[8] or other similar electronic identifier.

AMCO fails to provide any citation or factual support for its contention that Exclusion (1) applies.  <u>Cf</u> AMCO Br. at 13.  Indeed, there is absolutely no evidence that the Lauren-Spencer Defendants used Harris' name or product in its "email address, domain name or metatag."[9]  There is also no indication that the Lauren-Spencer Defendants used "any other similar tactics to mislead [Harris'] potential customers" by attempting to misdirect customers from Harris' website or email address to Lauren-Spencer's website or email accounts.  Accordingly, AMCO has failed to establish that Exclusion (l) bars coverage in this case.[10]

**2.    Exclusion (i) does not bar coverage.**

Although AMCO fails to mention Exclusion (i) in its cross-motion for summary judgment, in both its reservation of rights letter and its Complaint, AMCO has asserted that coverage for Harris' copyright infringement claims is barred by Exclusion (i).  <u>See</u> Facts at ¶ 20 & Ex. I; Complaint.  Yet, as more fully explained in the Lauren-Spencer Defendants' Motion for Summary Judgment, that provision is also inapplicable.

Exclusion (i) seemingly denies coverage for "'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property

---

[8]    A metatag is "an HTML tag that identifies the contents of a Web page for the search engines. Meta tags are hidden on the page, but they, as well as all the HTML code on a page, can be viewed by selecting View/Source or View/Page Source from the browser menu. Meta tags contain a general description of the page, keywords and copyright information." <u>See</u> PC Magazine Website at http://www.pcmag.com /encyclopedia_term/0,2542,t=meta+tag&i=46845,00.asp.

[9]    Note that Lauren-Spencer's website address is "https://www.lauren-spencer.com" and Lauren-Spencer email addresses are formatted as "name@lauren-spencer.com." <u>See</u> <u>generally</u> Facts at ¶¶ 15, 17 & Exs. E-F.

[10]    As AMCO properly acknowledges, it has the burden of establishing the applicability of any Policy exclusions.  <u>See</u> AMCO Br. at 5 ("The insurer has the burden to establish application of policy exclusions.").

rights." Facts at ¶ 9, Ex. A (pg.0014, ¶2(i)). However, an exception to Exclusion (i) provides

that the exclusion "does not apply to infringement, in your advertisement, of copyright, trade

dress or slogan." Id. (emphasis added). Essentially, the exception to Exclusion (i) operates in

tandem with the Policy's grant of coverage under the "Personal and Advertising Injury Liability"

section to reinstate coverage for advertising injuries caused by Lauren-Spencer's "infringement,

in its advertisement, of copyright, trade dress or slogan." See id.; see also Lauren-Spencer Br. at

4-5.

As explained above, the undisputed facts confirm that Exclusion (i) does not bar coverage

for Harris' claims. First, Lauren-Spencer's display boards, brochures, and website constitute

"advertisements" as defined by the Policy. See Section II.B., *supra*. Second, Harris' complaint

and the undisputed facts establish that a sufficient causal connection existed between Lauren-

Spencer's advertising activities and the injuries that Harris alleges. See Section II.C., *supra*. In

fact, because Lauren-Spencer does not manufacture jewelry, if Harris' copyrights were infringed

by Lauren-Spencer at all (again, Lauren-Spencer vigorously disputes this point in the Harris

lawsuit), the infringement on Harris' copyrights must have occurred "in [Lauren-Spencer's]

advertisement." Facts at ¶ 7. Accordingly, Exclusion (i)does not preclude coverage to the

Lauren-Spencer Defendants for the claims asserted by Harris.

**E.    Because AMCO Has a Duty to Indemnify, It Also Has a Duty to Defend the Lauren-Spencer Defendants in the *Harris* Lawsuit**

A liability insurance policy, such as the Policy that Lauren-Spencer purchased from

AMCO, imposes two separate and distinct duties on the insurer: a duty to indemnify and a duty

to defend. Owners Ins. Co. v. Nationwide Ins. Co., 167 Ohio App. 3d 276, 281 (Jefferson Cty.

2006) ("In an insurance policy, an insurer promises to both indemnify the insured for losses

incurred by the insured that arise out of the occurrence of a risk identified in the policy and

18

defend the insured in an action arising because of that occurrence."), citing Twin Maples

Veterinary Hosp. v. Cincinnati Ins. Co., 159 Ohio App. 3d 590, 2005-Ohio 430 at ¶ 11.

Moreover, these separate duties are triggered by different events.  Id. ("The duties to indemnify

and defend are separate, distinct, and triggered by different events.").

> "The duty to indemnify is based on whether there is, in fact, liability under the policy."

Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co., 128 Ohio App. 3d 396, 402 (Summit Cty.

1998).  As noted above, AMCO promised, though the express provisions of the Policy,   to

indemnify the Lauren-Spencer Defendants for any liability that may result from Lauren-

Spencer's infringing on another's copyright interests in its advertisements.  In the unlikely event

that the Lauren-Spencer Defendants are determined to be liable for the copyright infringement

claims asserted by Harris, the Lauren-Spencer Defendants will be entitled to indemnification

under the Policy for the reasons outlined in the sections above.

> By contrast, "[a]n insurer's duty to defend is broader than . . . its duty to indemnify."

Sharonville v. Am. Employers Ins. Co., 109 Ohio St. 3d 186, 189 (2006).  In fact, an insurer has

an "absolute duty to defend an action when the complaint contains an allegation in any one of its

claims that could arguably be covered by the insurance policy, even in part and even if the

allegations are groundless, false or fraudulent."  Id., citing Sanderson v. Ohio Edison Co., 69

Ohio St. 3d 582 (1994).

> Not only does Harris' complaint contain at least one allegation "that could arguably be

covered" by the Policy as set forth above, the evidence conclusively establishes that AMCO   is

obligated to indemnify the Lauren-Spencer Defendants for any liability they may have for

copyright infringement in their advertisements.  Because AMCO is contractually obligated to

indemnify the Lauren-Spencer Defendants, AMCO is likewise bound to honor its broader contractual duty to defend the Lauren-Spencer Defendants.

## III.  CONCLUSION

The undisputed evidence before this Court clearly establishes that Ohio's four-part test for determining whether an insured is entitled to advertising injury coverage has been satisfied in this case.  Harris' alleged injury arises from infringement of his copyrights; the Lauren-Spencer Defendants engaged in advertising; there is a sufficient causal connection between the alleged injury and the advertising activities; and no Policy exclusion bars coverage in this case.  Under Ohio law, therefore, AMCO is contractually obligated to defend and indemnify the Lauren-Spencer Defendants for the claims asserted byHarris .  Accordingly, AMCO Insurance Company's Motion for Summary Judgment should be denied and the Lauren-Spencer Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,


s/William J. Pohlman
William J. Pohlman (0040912)
Kathreen Nuber McGinnis (0078041)
VORYS SATER SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Telephone:    (614) 464-8349
Facsimile:    (614) 719-4908
wjpohlman@vssp.com

*Attorneys for Defendants Lauren-Spencer, Inc.,
Shirley Lee, Bowen Lee, and Popphie Lee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to the following counsel of record in this matter:

Amy S. Thomas
Reminger & Reminger Co., LPA
Capitol Square Office Building
65 E. State Street, 4th Floor
Columbus, OH  43215-5657

*Attorneys for Plaintiff AMCO Insurance Company*

William M. Mattes
Dinsmore & Shohl
175 S. Third Street
Suite 1000
Columbus, OH  43215-5134

*Attorneys for Defendant George Harris*

s/William J. Pohlman
William J. Pohlman (0040912)

21